UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:05-00003 |
| v. | ) | JUDGE CAMPBELL |
| | ) | |
| YOUNG MOON, | ) | |

**UNITED STATES' POSITION WITH RESPECT TO SENTENCING**

The United States hereby submits the following position with regard to Defendant Young Moon's sentencing.

**I.    Factual Background**

In this case, a two week jury trial was held, and the jury found Moon guilty of all four counts in the Indictment. Counts 1 through 3 charged her with health care fraud in violation of 18 U.S.C. § 1347 and 2. Count 1 concerned the drug Taxol. Count 2 concerned the drug Camptosar, and Count 3 concerned the drug Procrit. Under § 1347, this Court may sentence Moon for up to ten years on each count. Count 4 charged Moon with making false statements to a federal agent in violation of 18 U.S.C. § 1001. Under this statute, the Court may sentence her for up to five years.

Under the sentencing guidelines, Moon's base offense level for these grouped offense is 6, pursuant to U.S.S.G. § 2B1.1.1(a)(2). Because the intended loss in this case was over $1,000,000, Moon receives 16 additional points pursuant to U.S.S.G. § 2B1.1(b)(1)(I). Since the offense involved 10 or more victims, Moon's offense is increased by 2 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A). Because the offense also involved sophisticated means, Moon receives 2 more points pursuant to U.S.S.G. § 2B1.1(b)(9)(C). As the offense involved the conscious or reckless risk of death or serious

1

bodily injury,[1] Moon receives 2 more points pursuant to U.S.S.G. § 2B1.1(b)(12)(A). Since Moon knew or should have known that victim of the offense was a vulnerable victim, her offense level is increased by 2 levels pursuant to U.S.S.G. § 3A1.1(b)(1). Furthermore, since. § 3A1.1(b)(1) applies and the offense involved a large number of vulnerable victims, Moon receives 2 additional points pursuant to U.S.S.G. § 3A1.1(b)(2). Given that Moon abused a position of trust or used a special skill in committing or concealing her offense, she receives 2 more points pursuant to U.S.S.G. § 3B1.3. Finally, since Moon obstructed or impeded the administration of justice, she receives 2 extra points pursuant to U.S.S.G. § 3C1.1. This raises the total offense level to 36.

Moon has no criminal history points and is therefore a criminal history category I. Her resulting advisory guideline range is 188 to 235 months.

## II. Legal Analysis

### A. Booker, the Sentencing Guidelines and 18 U.S.C. § 3553(a)

In Booker, the Supreme Court held that the United States Sentencing Guidelines are no longer mandatory and binding on sentencing courts, but rather advisory in nature. 125 S. Ct. 738, 757. A sentencing court now is required to consider a defendant's sentencing guideline range in imposing the appropriate sentence, along with other factors, as set forth in 18 U.S.C. § 3553(a).[2] Id. In Booker,

---

[1] The United States will present evidence supporting this claim at the sentencing hearing.

[2] The Supreme Court stated in Booker that
> Without the "mandatory" provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals. See 18 U.S.C.A. § 3553(a). The Act nonetheless requires judges to consider the Guidelines "sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant," § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7). And the Act nonetheless requires judges

2

the Supreme Court severed the statutory provisions making the Guidelines mandatory (18 U.S.C. §3553(b)(1)) and setting the standard of review on appeal (18 U.S.C. §3742(e)). Thus construed, the "Federal Sentencing Act . . . requires a sentencing court to consider Guidelines ranges . . but it permits the court to tailor the sentence in light of other statutory concerns as well." Id.

Pursuant to Booker, a District Court

> shall impose a sentence sufficient, but not greater than that necessary to comply with the purposes [in 18 U.S.C. §3553(a)(2)]. The court, in determining the particular sentence to be imposed, shall consider -
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed -
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant;
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1)-(2)(A)-(D). The Court also must consider the kinds of sentences available, the guideline range, any pertinent Sentencing Commission policy statement, the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(3)-(7).

Since the Sentencing Guidelines are now advisory, the Court has the discretion to impose a

---

to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care. § 3553(a)(2).
125 S. Ct. at 764.

3

sentence within, above, or below the Sentencing Guidelines range in light of these statutory concerns, subject to statutory limitations. The sentence is subject to appellate review for "unreasonableness" in light of the previously noted statutory concerns. Booker, 125 S. Ct. at 765-66.

### B. The $1,000,000 Plus Intended Loss Enhancement Applies

The United States will present evidence at the sentencing hearing showing that the intended loss in this case exceeds $1,000,000. This evidence will generally show that, during the indictment timeframe, Moon billed insurance companies for more than $1,000,000 worth of Taxol, Camptosar and Procrit that she neither had in her inventory nor gave to her patients. Although the insurance companies paid Moon less than this full billed amount, the over $1,000,000 figure still counts as the intended loss for sentencing purposes. See U.S.S.G. § 2B1.1(b)(1)(I), cmt. n.3(A)(ii). Although Moon may argue that losses should be offset by services rendered, this theory has no application in this case, where Moon did not render or provide the medicine at issue.

### C. The 10 or More Victims Enhancement Applies

The offense here involved 10 or more victims. Specifically, it involved the 3 insurance programs named in the indictment, the 15 other private insurance companies that Moon defrauded, and the patients who did not receive the full doses of the 3 drugs at issue that Moon represented she gave them and billed for having given them. See infra at 6-7 (discussing number of injured patients). These groups collectively represent 10 or more victims, so the enhancement for this under U.S.S.G. § 2B1.1(b)(2)(A) should apply here.

Moon complains that the jury did not find that there were more than the 3 victims in the indictment. But this Court can make this finding on its own at sentencing. Moon further objects that the government argued that patient harm was not an issue in this case. However, the United States'

4

Case 2:05-cr-00003    Document 270    Filed 03/10/06    Page 4 of 10 PageID #: 1531

position was only that patient harm was not at issue for the guilty stage at trial. For sentencing purposes, harm to both patients and other victims is certainly a proper consideration, and the United States has never said otherwise.

### D. The Sophisticated Means Enhancement Applies

In her objections to the pre-sentence report, Moon argues that the offense here was filing false claims and that no sophisticated skill was required. Therefore, she claims, the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(9)(C) does not apply. But initially, the jury convicted Moon of health care fraud – not filing false claims – and of making false statements to a federal agent. To commit the health care fraud offense, the trial evidence showed that Moon employed her skills as a physician both (1) to convince her nursing staff to carry out her instructions to prepare and give partial doses of Procrit to patients and (2) to mix the chemotherapy drugs Taxol and Camptosar herself, so that only she would be able to precisely identify whether she was giving full doses of these drugs to patients. In both regards, the use of Moon's medical degree and knowledge certainly constitutes "sophisiticated means."

### E. The Large Number of Vulnerable Victims Enhancement Applies

In this case, there were a large number of vulnerable victims of Moon's conduct, so the enhancement for this under U.S.S.G. § 3A1.1(b)(2) should apply. The Guidelines commentary defines vulnerable victims as victims of the defendant's conduct who are "unusually vulnerable due to age, physical or mental condition, or who [are] otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(2), cmt.2. Here, the vulnerable victims were Moon's cancer patients – who were often elderly – and who received partial doses of Taxol, Camptosar and/or Procrit while Moon purported to be giving them full doses. Compare U.S.S.G. § 3A1.1(b)(2), cmt.2 (noting that

5

this adjustment would apply "in a fraud case in which the defendant marketed an ineffective cancer cure"); United States v. Curly, 167 F.3d 316, 319-20 (6th Cir. 1999) (affirming district court's imposition of vulnerable victim enhancement in case where 22 of 24 victims were in their late 70s and early 80s).

There is little caselaw about what constitutes a large number of vulnerable victims, and the Sixth Circuit has not spoken to the question. But common sense dictates that twenty or more such victims would easily meet this requirement. In dicta, moreover, the Eighth Circuit suggested that this enhancement would apply where there were at least 30 vulnerable victims. See United States v. Moskal, 211 F.3d 1070, 1074 (8th Cir. 2000).

At trial, Dr. Rothenberg testified that based on his review, at least 6 of Moon's patients did not receive the charted doses of Taxol or Camptosar: Gerald Cambpell, Gloria Cochran, Herbert Cordell, Richard DeMars, Howard Edwards and Lawrence Nale.[3] Additionally, nurse Kathy Harper testified that Billy Jones did not receive Taxol on a day when he was billed for getting it. Patient Sheila Taylor also testified that she only got 4 Camptosar treatments, even though her billing records show that Moon billed for giving her 5 such treatments. Thus, the trial testimony showed that there were at least 8 patients who were billed for Taxol or Camptosar treatments that they either did not receive whatsoever or of which they got only partial dosages. The trial testimony further suggested that there were more such patients, but the precise number could not be established since only Moon was privy to that information concerning chemotherapy drugs given by IV bags. At the sentencing hearing, the United States will present further evidence that – even giving Moon the benefit of the

---

[3] Cordell, DeMars and Edwards were Taxol patients, while Campbell, Cochran and Nale were Camptosar patients.

6

doubt – there were at least 9 Taxol patients and at least 5 Camptosar patients who got less than full doses charted and billed.

As for Procrit, the nurses all testified that – with a handful of rare exceptions during the indictment timeframe – they consistently gave partial doses of Procrit to Moon's patients at her direction while marking these doses as if they were full doses. During this period, there were 69 patients for whom Moon billed for giving Procrit. Since 8 of these 69 patients also got partial or no doses of Taxol or Camptosar,[4] that means that there were 61 patients who got partial doses of Procrit alone. When combining these 61 patients with the 14 patients who were shorted on Taxol or Camptosar, there is a total of at least 75 such cancer patients who received less medication than Moon purported to have given them. Thus, there were at least 75 vulnerable victims, and the large number of vulnerable victims enhancement is applicable.

  F.  **The Abuse of Position of Trust Enhancement Applies**

This enhancement applies when a defendant abused a position of public or private trust or used a special skill in a way that facilitated her commission of the offense. U.S.S.G. § 3B1.3. The commentary to this provision describes a position of trust as one that has professional or managerial discretion and gives examples of "special skill" as including skills possessed by "doctors." U.S.S.G. § 3B1.3. cmt.1 & 3. Here, Moon's offense falls under both possible means of qualifying for this enhancement. First, she abused her professional position as a doctor and manager of a solo medical practice by defrauding her patients – who relied on her completely – and their insurance companies. Second, Moon used her medical training as a special skill.

---

[4] Specifically, Jones, Cochran, Edwards and Nale also got Procrit during the indictment timeframe.

7

But Moon argues that this enhancement does not apply here, because only doctors can commit health care fraud. However, neither § 1347 nor § 1001 require that someone be a doctor in order to violate them. Indeed, many persons have been convicted of violating these sections without being a doctor, such that this skill is not already included in the base offense. In considering the same issue regarding a law criminalizing the illegal distribution of pharmaceuticals, the Sixth Circuit found that anyone could be found guilty of violating it – not just doctors – and ordered the district court to consider if the special skill enhancement applied in that case. United States v. Johnson, 71 F.3d 539, 544 (6th Cir. 1995).

**G.     The Obstruction of Justice Enhancement Applies**

The obstruction of justice enhancment can apply in various circumstances. See U.S.S.G. § 3C1.1. These include when a defendant commits perjury or gives a materially false statement to a law enforcement officer that significantly impeded the investigation of the instant offense. U.S.S.G. § 3C1.1 cmt. 4(b) & (g). When adding points to a sentence for obstruction, "the district court should identify specifically which statements or actions by a defendant constitute an obstruction of justice." United States v. Lawrence, 308 F.3d 623, 632 (6th Cir. 2002).

In this case, Moon obstructed justice in the 2 ways mentioned above. First, she committed perjury at trial. Specifically, she did this by testifying that (1) she never intentionally billed chemotherapy drugs in amounts other than what she had administered to patients; (2) she never told a nurse to "chart ahead" the amounts of medicine administered before the medicine was actually given; and (3) on January 9, 2002, she had truthfully answered the questions that investigative agents asked her. Second, as reflected in her § 1001 conviction, Moon gave materially false statements to a federal law enforcement officer that significantly interfered with the investigation.

8

Moon argues that this second aspect does not apply here, claiming that her statements did not interfere with the investigation and that her sentence cannot be enhanced for an offense of which she was convicted. Neither objection has merit. Initially, to the extent that there is any remaining question after her § 1001 conviction, the United States will present more evidence at the sentencing hearing showing that Moon's false statements were material. Further, the Guidelines commentary provides that when a defendant is convicted both of an obstruction offense and an underlying offense, these counts will be grouped together and then the court will apply the greater of either the grouped offense level, plus the 2 point obstruction enhancement, or the offense level for the obstruction offense alone. U.S.S.G. § 3C1.1 cmt.8. In this case, it is clear that the offense level for the grouped offenses is far greater than that for the false statements offense alone, since the grouped offenses receive 16 additional points for monetary loss that the false statements offense does not. As such, the 2 point obstruction enhancement applies and does not result in impermissible double counting of offenses.

### H. A Fine in the Guidelines Range Is Appropriate Here

The Guidelines state that "the court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). If the Court finds that Moon's offense level is 36 – as the United States suggests – Moon's fine range will be between $20,000 and $200,000. U.S.S.G. § 5E1.2(b) & (c)(3). As reflected in the pre-sentence report section on ability to pay, she has a net worth of $1,537,965. Thus, even when the mandatory restitution of $432,238 is subtracted from that total, Moon will still have assets that far exceed the fine range in this case. That Moon has not yet sold all of these assets should not prevent a fine from issuing against her. Consequently, this Court should require Moon

9

to pay a fine in the Guidelines range.

**III.   Conclusion**

In this case, the Sentencing Guideline factors properly capture the seriousness of Moon's conduct. A sentence within her advisory Guidelines range of 188 to 235 months is "reasonable" in light of the factors the court is to consider under 18 U.S.C. § 3553(a) and should be imposed here.

Respectfully submitted,<br>
JAMES K. VINES<br>
United States Attorney<br>
<br>
s/ Ellen Bowden McIntyre<br>
Assistant United States Attorney<br>
110 Ninth Avenue South, Suite A-961<br>
Nashville, Tennessee 37203<br>
(615) 736-5151

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was sent, if registered, via the Court's electronic filing system or, if not registered, deposited in the United States Mail, postage prepaid, to **Jennifer Lynn Thompson**, 1208 Seventeenth Ave. South, Nashville, TN 37212, this 10th day of March, 2006.

s/ Ellen Bowden McIntyre